We'll turn to the next case on the docket. It's Christine D'Onofrio v. Costco and Ms. Pohl is here for D'Onofrio and Mr. Cardi is here for Costco. And Ms. Pohl, are you ready to begin with your argument? I am, Your Honor. May it please the Court, Beverly Pohl for Christine D'Onofrio. The pertinent issue at this trial was whether Costco provided a reasonable accommodation to its totally deaf employee. After an eight-day evidentiary trial, the jury said it did not. Our position is that the Court's post-judgment order setting aside the verdict and granting judgment in Costco's favor was both contrary to law and inconsistent with any fair assessment of the disputed evidence. In particular, the District Court misapplied the agreed standards governing post-judgment motions. With regard to the motion for judgment as a matter of law, the District Court failed to view the evidence in the light most favorable to Ms. D'Onofrio and failed to even discuss the evidence from which a reasonable jury could have ruled in her favor. And as I will discuss in more detail in a moment, the District Court has a long line of cases holding that absent any other trial errors where the evidence is disputed, a ruling granting a new trial based on the great weight of the evidence almost always has been found to invade the providence of the jury and must be reversed. So turning to the judgment as a matter of law, because we have to prevail there before we get to the new trial issue, the Court's order was based on this view of the evidence. Court viewed the VRI, the Video Remote Interpreter, as a reasonable accommodation and then found that because she didn't necessarily want to use it, she obstructed the use of the VRI and therefore Costco must prevail. With regard to the other alternative accommodation, the three-manager communication team, which had been initially implemented at the recommendation of the Center for the Hearing and Communication, the Court found that was not required so that Costco was permitted to discontinue that. Why was that order reversible error? And I think to answer that question, you have to look at the evidence supporting the verdict. Is it clear from the evidence in this case that she repeatedly hung up on the VRI and refused to use it, that she refused to attend the meetings that they set up that were recommended? There were instances where she didn't want to use the VRI but then later agreed to use it. And there were instances where she hung it up because from her testimony, Mr. Pack was obstructing the proper use of the VRI. But I think it's important to remember that the VRI was only used in a disciplinary setting. It's not what she asked for. So I think that you can't start with the premise that the VRI is reasonable. I think in a vacuum, it looks like a good tool to use for somebody who is deaf. But what did she ask for? When she originally reached out to Costco and said, I can't communicate with my manager, he refuses to talk to me, he mumbles, he looks away, he smirks at me. That had nothing to do with a disciplinary ECN session. That had to do with ongoing day-by-day work. And what she asked for was training in what's called deaf culture. She wanted the managers to understand more about a deaf person because Mr. Pack had never had a deaf employee and any limited training he had had been more than 20 years ago. So yes, she occasionally didn't want to use it in that disciplinary setting, but that's not really what it was brought in for. It was brought in by Costco because they thought it might help with communication. But did Mr. Pack ever sit down with her and say, Christine, here is this machine. This could really help us. I've never used it, you've never used it. Let's sit down and have a conversation and see how this goes. No, he did not. Paul, this is Judge Bush. I apologize for interrupting. I'm trying to get a handle on what exactly Ms. D'Onofrio asked for as far as an accommodation that was not provided. She asked for essentially two things. She asked for training in deaf culture and she asked for a live on-site interpreter for meetings. Okay, now let me parse those. The first one, training in deaf culture, I thought the evidence was that there was training in deaf culture that was provided. But training means nothing if it's not implemented, Your Honor. And yes, there was training, but they were given the information they needed, but they didn't put it into practice. And I think the most stark evidence of that was that shortly after the training session, which was just a couple hours long, a new manager came on the scene, Mr. Holliday. He too had never had a deaf employee and no one from Costco, not HR, not Mr. Pack, no one. If we go to the, if we look at the transcript of the trial, will we see evidence that she requested that Holliday undergo deaf training? Not particularly Holliday, but it is an ongoing obligation. And it's not like Mr. Holliday showed up two years down the road. He came to the store a month after they had had this training and yet no one showed him the PowerPoint that the deaf center had provided to use for training purposes. Wasn't he already familiar with deaf culture and that he had no difficulty communicating, that she had no difficulty communicating with Holliday? Initially, they had no trouble communicating and he had a deaf relative and they tried to he wrote her up for some alleged misconduct in the workplace. It was for behavior that was specifically described by the center for Dr. Williams at the center for hearing as typical, very typical of a deaf person's communication style. In other words, she spoke loudly. She used a lot of gestures and body language. She sometimes would bang on furniture to make a point. Those were precisely the things that he wrote her up for. And she denied repeatedly that she was behaving incorrectly. She was merely trying to communicate. And when those instances happened, the VRI wasn't there. The VRI sat and gathered dust from January to August. They never even attempted to use it. Mr. Pack was never even trained on it. And by the time she was written up for these kinds of things and got to the ECN sessions, which were all clustered in about a one month period. There was testimony at the trial that with respect to the VRI, she repeatedly hung up on it and refused to use it. That presumes that the VRI would have been a reasonable accommodation to improve conversation or communication between her and her managers. And it had never proven to be that. But remember, by the time she got to the sessions where she didn't want to use it, she was already basically adjudicated guilty. They had already written her up and decided to impose some kind of, at the very least, a record of misconduct, if not discipline. So it's too late at that point, because the accommodation needs to occur in the workplace, not in the disciplinary meeting. What would have been reasonable accommodations? There was one, actually, that the Center for Hearing recommended, which was assign a three-person manager communication team. So those people can be her go-to managers and minimize the number of people that she has to communicate with. And they did that. And was there testimony at the trial that she specifically requested that as an accommodation? That was recommended by Dr. Williams. That particular accommodation was not what she requested. Ms. Paul, this is Judge Marcus. Let me ask you the question this way. As I understand it, your argument is that she asked for training and she asked for live on-site interpreters and she didn't get what she was asked for. Is that the thrust of your claim? I think that the thrust of my claim is that the judge did not view the evidence in the light most favorable to her. No, but I'm not asking that question. What is it that she asked for that she did not get? I want to go back to the question that Judge Bush asked you. I understood you to say that she asked for training and she asked for a live on-site interpreter. Did I misapprehend that? No, that was correct. She asked for- Let me stop you then at both of those points if I can. Insofar as she asked for training, I understood from the record that there was a four-hour training session for all of them, including notably Mr. Pack. Is that not true? There was a session, but it was not implemented. The things that were taught in the training were not implemented. The training is meaningless unless people learn. Let me just stop you. The training session was fine. They just didn't live up to what they should have learned and did not learn from it, right? Correct. Correct. Okay. Then the second claim you make is that she should have been entitled to a live on-site interpreter, but as I understood it, they provided her on three or four occasions with a live on-site interpreter. There were interpreters in the room when Powers and Lee Castro first met with Ms. D'Onofrio to discuss her concerns. There was a live on-site interpreter there when the Center for Hearing and Communication hosted a training session for D'Onofrio and the supervisors. There was a live on-site interpreter when Costco distributed its employee handbook. Finally, there was a live interpreter when Pack fired D'Onofrio. I understood you, Carl, with the fourth of those, but were there not live on-site interpreters on at least three other occasions? On those occasions, there were. I think it's very telling that the reason they had a live interpreter at the termination session was because Mr. Powers said, we wanted to make sure she understood. The Center for Hearing recommended a live on-site interpreter for performance evaluations. She didn't have one of those for any of those other ECN performance evaluations. Here's a key piece of evidence from which a jury could have ruled in her favor. Three different people, in addition to Ms. D'Onofrio, agreed in their testimony that the VRI alone was not enough. Dr. Williams agreed to that, even Mr. Pack agreed to that, and Mr. Powers agreed to that. That's key. If a jury latched onto that, they could find that even though Costco put a VRI in, they didn't use it for six or eight months. Then they only used it in disciplinary sessions. A reasonable jury could find that's not reasonable. Remember, the jury was not asked to decide if the VRI alone was reasonable. They were asked to decide if what Costco did overall was reasonable. From the outset, the evidence was highly disputed here. I'm not even getting to my new trial argument, which I'd like to get to. In that instance, the reasonable inferences should have been in her favor. With regard to the new trial, the key thing here is that the evidence was disputed. It's true that a judge can reweigh the evidence on a motion for new trial, but not where it's reversed when the only basis for a new trial is that the judge disagrees with the jury's assessment of disputed evidence. For those reasons, both the judgment as a matter of law and the conditional grant of a new trial were legal and factual error and should be reversed. Thank you, Ms. Poe. We'll hear from Mr. Cardi. Good morning, Your Honor. May it please the court, Rob Cardi for Costco Wholesale Corporation. Before I get to responding to some of the issues that my friend Ms. Poe mentioned, I think it's pretty important that we recognize up front that this case involves a very, very narrow issue. There is only one essential job function at issue here, and that is Ms. Donofrio's communications on the job. There's only one aspect of that job function that required an accommodation, and that is her communications with Mr. Pack. By Ms. Donofrio's own admission and indeed by her steadfast insistence throughout the trial, she had no problems communicating with anyone except for Mr. Pack. She said he mumbled so she couldn't read his lips. Costco took multiple measures in an effort to resolve this problem, and chief among them was the VRI machine. As the briefs explain, this VRI machine provides a live interpreter at the push of a button. Now, by any objective measure, this alone allowed Ms. Donofrio and Mr. Pack to communicate verbally. It eliminated any lip-reading issues, and it allowed for Ms. Donofrio's sign language to be professionally interpreted and translated into spoken English and vice versa. Costco provided other accommodations as well, but again, by any objective measure, the VRI machine alone allowed Ms. Donofrio to fully perform her essential job function of communicating, particularly with the only person with whom she had trouble. Now, I mentioned the VRI, but Costco did much more even though it didn't have to. In addition to the VRI machine, Costco did four things. First, it provided in-person interpreters when needed. There's no evidence that Ms. Donofrio was ever deprived of an in-person interpreter when she requested or otherwise needed one. Indeed, the jury was instructed that Costco provided this accommodation after it was suggested. The jury wasn't entitled to depart from that. This is Judge Bush. Did Ms. Donofrio ever ask for an in-person interpreter continuously on the job to be there all the time? No. Okay. So, the evidence is that she requested the on-site interpreter for discrete meetings. In fact, very few meetings. The reason that the VRI was put there was so that it would be available on an ad hoc basis. So, no. I mean, there was no expectation that someone would be there 24-7 on-site. Okay. Thank you. You're welcome. The second accommodation that Costco provided in addition to the VRI was that it had Mr. Pack and every other manager in her chain of command at the time undergo training on deaf culture, as we've already discussed. Ms. Donofrio testified that this training was very effective, that it was very nice, and that the instructor, Dr. Shanna Williams, did a good job. The third thing that Costco did was to offer ongoing mediation sessions among Ms. Donofrio, Dr. Williams, and Mr. Pack. But Ms. Donofrio declined to take advantage of this by refusing to meet with Mr. Pack. So, any suggestion that the training was not implemented needs to be taken with a grain of salt because there were attempts made, at least between Ms. Donofrio and Mr. Pack, the only person that she had a problem communicating with. And then fourth- This is Judge Wilson. It's clear from the testimony at the trial that Costco provided accommodations to Ms. Donofrio. The question is whether or not those accommodations are reasonable and whether or not that's within the province of the jury to determine whether those accommodations were reasonable. And it's pretty unusual for a district court to set aside a jury verdict, especially one like this, where she was awarded $750,000 in compensatory damages and $25,000 in punitive damages. This is kind of unusual. And so, I guess my question is, why couldn't a jury conclude, a reasonable jury conclude, that Costco failed to comply with its obligations under the Florida Civil Rights Act by failing to provide an on-site interpreter at every time? I will concede that this is an unusual case in many ways, Your Honor. But the reason that the jury could not reasonably so conclude is because the reasonableness standard is an objective one. And we have to decide objectively whether the accommodation allows the employee to perform an essential job function. And here's an important point. When answering this question, it's irrelevant whether an employer or an employee or anyone else subjectively thinks that more might be needed. As Judge Locke recognized at page 14 of his order, and which Ms. Donofrio does not challenge, he quoted- But isn't it in the province of the jury to determine that more might be needed? To make a reasonable determination, yes. But again, this is an objective standard. And in this particular case, which I concede is unusual, the only question was keeping in mind the very narrow accommodation that was at issue here, that is helping Ms. Donofrio to communicate with Mr. Pack. The question is, was a VRI machine a reasonable accommodation to help her do that? And I think it's almost self-evident. In fact, I think it is self-evident that a machine that allows a deaf person to talk to a hearing person with a sign language interpreter who's right there is absolutely reasonable. Remember, the problem that she had was that she couldn't read his lips. And that was the problem. That was the only problem. A VRI machine on any objective measure, on any fair measure, does away with that problem. And so I think that in this particular case, the jury could not reasonably conclude that a VRI machine was not a reasonable accommodation. And of course, let's not forget, there were other measures taken as well. I don't think that Costco had to take these other measures, but they went ahead and did it because that's the kind of company they are. But again, the VRI machine itself was reasonable. Now I can hear the next question, which is what about these three witnesses who Ms. Donofrio testified that it was not reasonable by itself? And if we look at all three of these, they testified to subjective, forward-looking beliefs, and none of the questions focused on what was at issue here, which is the narrow accommodation that was required with Mr. Pack. As I said before, I don't think that, I think the law says that to the extent there is subjective witness testimony about what the employer thought might be required in addition, well, that's just not relevant. And gosh, I think it's the Doe v. DeKalb case. Judge Locke cited it in his opinion, but let's take a look at what these three witnesses actually said. Mr. Powers, let's take him first. He testified that Ms. Donofrio complained to him about two problems. Number one was her communications with Mr. Pack. But number two was this notion that Costco in general didn't understand the deaf culture. Four pages later, he was asked a question about his initial expectations before the parties had even met at the Center for the Deaf. And that question was very broadly stated, and it did not focus on what we are concerned with today, that is Ms. Donofrio's problem communicating with Mr. Pack. Mr. Power was asked, you were not, quote, you were not expecting at that point in time when you set up that meeting at the Center for the Deaf Culture that the VRI machine was the sole exclusive answer to the communications problems that Christine was experiencing at Costco. This question has a couple of features that really limit its usefulness for the present purposes. First, it asked what Mr. Powers subjectively believed before the meeting at the Center for the Deaf even happened. He was never asked what he thought afterwards after having seen the VRI in action, and he was never asked specifically whether the VRI would help with Ms. Donofrio's Mr. Pack. And again, it is self-evident that a translator, which is something that the regulations specifically contemplate for this situation, did the job. It took care of the problem, the lip-reading problem that Ms. Donofrio had. Mr. Pack presents a similar situation. He testified that the purpose of the meeting at the Center for the Deaf was twofold, to meet, quote, to meet with And as with Mr. Powers, Mr. Pack was asked only what he subjectively believed at the time of that meeting. And as with Mr. Powers, Mr. Pack's questions didn't ask about Ms. Donofrio's communications problems with him, Mr. Pack, but were always phrased broadly enough to encompass her contention that Costco needed to understand Deaf culture. And by the way, understanding Deaf rights act, think of religious discrimination cases where somebody of a particular religion needs some time off or needs permission to wear a religious article. You may have to give them that extra time. You may have to give them that permission to wear that religious article, but there's no requirement that you steep yourself in the rigors of that religion. And the Deaf culture training, the only person who it could conceivably have applied to here was Mr. Pack, and he underwent that training. And as I said before, Ms. Donofrio said that it was very effective. As for this notion that it had to be ongoing training, well, I think that that's, um, you know, that creates an impossible barrier because, uh, yes, was there any evidence of any other technology besides VRI to accomplish what VRI was intending to accomplish? No, your honor, nothing like that. So VRI was really the only technology at issue. Ms. Donofrio did not introduce any evidence of any other way to, to communicate, um, via technology, not via technology. No. Okay. So her contention is that there should have been an onsite interpreter instead of the technology as I understand it. But my, but I also understand based on your argument that she only asked for an onsite interpreter on three or possibly four occasions. Yes. And there's no evidence that she was ever deprived of an onsite interpreter when either she asked for it or when she otherwise needed it. Um, in fact, uh, there is some Well, again, as I said before, the jury was instructed that defendant agreed to, and it did provide on two minutes. Thank you. Uh, defendant agreed to, and did provide onsite interpreters for group slash department meetings after the suggestion was raised in the March 1st, 2013 training at, uh, at the center for the deaf. So in other words, the jury was specifically instructed that Costco did exactly what Ms. Donofrio asked. Um, and despite what Ms. Donofrio argues on appeal, the jury wasn't entitled to deviate from this instruction. And so the inquiry should stop right there. But, um, you know, in addition, uh, judge Bush, Alan holiday testified without contradiction that whenever he had an employee meeting, Mr. Pack would arrange for the interpreter for the termination meeting. And one was brought in Mr. Pack corroborated what, uh, Mr. Holiday said he testified without contradiction that he hired an onsite interpreter. Whenever Ms. Donofrio was in a meeting with other employees, Steve powers, likewise testified without contradiction that if there was a quote big group meeting unquote, then Costco would bring in an interpreter. If Ms. Donofrio required one or asked for one, um, Mr. Pack testified without contradiction that Ms. Donofrio never requested an onsite interpreter for her counseling sessions. There is no evidence that Ms. Donofrio ever attended a meeting with Mr. Pack, which was the main person. Uh, she had trouble with the only person she had trouble communicating with in which, uh, three or more people were talking. And if Mr. Pack wasn't there, Ms. Donofrio had no need for an interpreter of any kind because she didn't have trouble communicating with anyone else. Um, I would, uh, uh, like to also point out, I've already, I've already pointed out that the deaf culture training wasn't required under the FCRA, but in addition to that, um, the, uh, the three manager team wasn't required because again, a reasonable accommodation is required only if it helps the employee to achieve or to, to perform an essential job function. And here, the only essential job function that is expired time is expired. If I may finish this one sentence, your honor, um, uh, the only, the only accommodation at issue here was to help Ms. Donofrio communicate with Mr. Pack and the three, the three manager team that actually didn't help her do that. It actually diminished that essential job function. And, and eventually, uh, as the record shows, she used the three manager team to avoid Mr. Pack and, uh, my time has expired. Thank you for the court's time. All right. Thank you, counsel. I suppose you've reserved some time for rebuttal. Yes, your honor. I need to set my timer. One moment. Okay. Um, it seems to me that counsel for Costco is arguing that the VRI is per se sufficient and every, the rest of the analysis proceeds from there, but no law holds and no case holds that the VRI is per se sufficient in every circumstance. So that premise is flawed. The other thing that he argued at length was that the only communication problem she had was with Mr. Pack. And certainly that's what started the process. And that was her initial complaint. But at page 11 of the order on appeal, um, the court, the district court said that the problem at least to some extent went beyond Mr. Pack, uh, through and, uh, went beyond Mr. Pack. I don't need to quote it more fully, but Costco wants, once they knew she had a communication problem with management, they had an obligation to address that in a reasonable fashion. And they didn't just take Mr. Pack. Paul, this is a judge Marcus. Just one question. Did she ever indicate that she had any communication problem with any manager or a superior other than Mr. Pack? Well, there certainly were problems with, um, Mr. Holiday. He's the one actually who wrote her up repeatedly after never having been trained at all on how to manage a deaf employee. And so, yes, there were problems with Mr. Holiday. In addition to Mr. Pack, there were other, you know, just When you say problems with Mr. Holiday though, were those communication problems or were they just, you know, problems in terms of his management? I think it was his misunderstanding that when she spoke loudly, that she was misbehaving or being somehow inappropriate in the workplace. He didn't understand. He, nobody ever explained to him. Deaf people speak loudly, they gesture, they do things that superior people don't do. Counsel, time has expired. Yes. For all the reasons, if one looks at the standard of review here, it guides this decision. There were disputed facts and the judge erred in substituting his view of the facts for the jury. This case should be reversed and judgment entered on the verdict. All right. Thank you, Ms. Pohl. Thank you, counsel. I believe that concludes our arguments this morning. The court is adjourned.